James LILLY, Petitioner–Appellee,

v.

Jerry D. GILMORE, Warden,
Respondent–Appellant.

No. 92–2097.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1993.

Decided March 17, 1993.

George F. Taseff (argued), Jennings, Novick, Taseff, Smalley & Davis, Bloomington, IL, for petitioner-appellee.

Bradley P. Halloran (argued), Office of the Atty. Gen., Chicago, IL, Karen A. Kloppe, Office of the Atty. Gen., Crim. Appeals Div., Springfield, IL, for respondent-appellant.

Before FLAUM and MANION, Circuit Judges, and MILLER, District Judge.*

MILLER, District Judge.

The State of Illinois appeals an order granting petitioner James Lilly's petition for habeas corpus. The district court found that Mr. Lilly had been deprived of effective assistance of appellate counsel because his counsel failed to raise issues concerning a violation of the strictures of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and concerning a limitation on the presentation of evidence at trial favorable to the defense. For the following reasons, we reverse.

Mr. Lilly was convicted in December 1982 of deviate sexual assault and indecent liberties with a child, and, because of his two prior similar convictions, was sentenced to concurrent sentences of forty and fifteen years. On direct appeal, Mr. Lilly's appointed counsel challenged only the indecent liberties conviction. Mr. Lilly raised other issues (though not the issues pressed in this case) in a supplemental *pro se* brief with the state appellate court. In an unpublished order, the Illinois Appellate Court reversed the indecent liberties conviction but affirmed the deviate sexual assault conviction. The Illinois Supreme Court denied Mr. Lilly's *pro se* petition for leave to appeal.

In 1987, Mr. Lilly sought post-conviction relief from the Illinois courts, raising (among others) the issues now before this court. The state appellate court held that Mr. Lilly had waived his ineffective assistance of counsel claims by failing to raise them in his *pro se* supplemental brief on direct appeal, and, alternatively, that no prejudice had been shown because the trial court's rulings were correct. After the Illinois Supreme Court denied leave to appeal, Mr. Lilly sought a writ of habeas corpus from the United States District Court for the Central District of Illinois. The State's initial response to the petition explicitly stated that "it would appear that no procedural bar precludes this court from addressing the merits", and went to the merits of Mr. Lilly's ineffective assistance of counsel claims. The district court found that the State had waived any procedural challenge and that Mr. Lilly had received ineffective assistance of counsel on his direct appeal, and so granted the writ and ordered the State to retry Mr. Lilly within 120 days.

The State appeals. Our review is plenary. *Freeman v. Lane*, 962 F.2d 1252 (7th Cir.1992). "A federal district court reviewing a habeas petition must perform its own review and we must do the same." *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992).

## A. Procedural Default

The State contends that the state appellate court's finding of waiver precludes federal habeas review. We agree with the district court that the State

---

* The Honorable Robert L. Miller, Jr., District Judge of the Northern District of Indiana, sitting by designation.

waived this argument. Not only did the State initially fail to address the procedural default argument; its answer affirmatively admitted the absence of any procedural bar. *See Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990) ("Procedural rules apply to the government as well as to the defendants.... [I]f as a result a violent offender goes free, the Attorney General of Illinois must understand where the responsibility lies—with his own staff.").

■ We would reach the merits even had the State not waived the issue. As noted above, the state appellate court rejected Mr. Lilly's post-conviction efforts on the ground that Mr. Lilly waived his new arguments by failing to raise them in his *pro se* supplemental brief on his direct appeal. While a federal court may not review a decision based on independent and adequate state law grounds, *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), a rule applied infrequently, unexpectedly, or freakishly may not constitute an independent and adequate state ground. *Prihoda v. McCaughtry,* 910 F.2d 1379, 1383 (7th Cir.1990). Mr. Lilly argues ineffective assistance of appellate counsel. The State concedes that no Illinois decision before or after Mr. Lilly's case has found waiver from an issue's omission from a *pro se* brief filed by an appellant dissatisfied with his appointed counsel's brief; this court does not believe that the Illinois Appellate Court announces new rules of law in unpublished decisions. Because Illinois precedent did not support the principle upon which the state appellate court acted, the appellate court's decision cannot be said to have been based on an adequate state ground. Accordingly, the district court correctly proceeded to address the merits of Mr. Lilly's claim of ineffective assistance of counsel, as do we.

*B. Ineffective Assistance of Counsel*

■ Claims of ineffective assistance of counsel trigger the two-step analysis of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Mr. Lilly must show that (1) his appellate counsel's performance fell below an objective standard of reasonableness, and (2) his appellate counsel's deficiencies prejudiced the result of the appeal. *Freeman v. Lane,* 962 F.2d at 1257; *see Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65. A habeas petitioner satisfies the performance prong by identifying specific acts or omissions that fell outside the wide range of professionally competent assistance; to satisfy the prejudice prong, a habeas petitioner must demonstrate a reasonable probability that counsel's unprofessional errors affected the outcome of the proceeding. *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066. For federal habeas purposes, a state court's holding that counsel rendered effective assistance is not a factual finding binding on federal courts to the extent stated by 28 U.S.C. § 2254. Rather, the issue of counsel's effectiveness is a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. at 698, 104 S.Ct. at 2070; *United States ex rel. Barnard v. Lane,* 819 F.2d 798, 802 (7th Cir.1987).

1. Failure to Raise Miranda Issue

The Miranda issue centers upon an unrecorded post-arrest conversation between Mr. Lilly and Sergeant James Graham. Because Mr. Lilly did not testify at trial, Sgt. Graham's testimony constitutes the sole evidence before any court concerning the conversation. Mr. Lilly had been arrested at a hospital on the day of the charged sexual assault on his niece. Sgt. Graham testified that he informed Mr. Lilly of his *Miranda* rights and that Mr. Lilly nodded affirmatively when asked if he understood them. Sgt. Graham then asked Mr. Lilly if he wished to talk about the deviate sexual assault on his niece, and Mr. Lilly responded, "I guess I don't have anything to say." Sgt. Graham asked what was meant by "I guess", and Mr. Lilly said that he really didn't know what happened, and that was why he was trying to get help at a hospital. Sgt. Graham asked why Mr. Lilly wanted help, and Mr. Lilly said he wanted help for things he does but does not remember. Sgt. Graham asked what the things are that Mr. Lilly does not remember, and whether the cause could be

drinking; Mr. Lilly said no, he didn't drink. Sgt. Graham asked if it could be from taking pills or the like, and Mr. Lilly said no, he didn't take pills.

Sgt. Graham then asked about the events with Mr. Lilly's niece that morning. Mr. Lilly said he remembered that she had been coming to his apartment every morning, but did not recall what had happened that morning. Mr. Lilly added that if his niece said he did that, he must have done it because his niece had no reason to lie.

Based on that evidence, the Illinois Appellate Court, applying its own standard of review in denying Mr. Lilly's post-conviction petition, held that:

> Following a hearing on the petitioner's motion to suppress these incriminating statements, the trial court found that the petitioner's *Miranda* rights were not violated since he did not affirmatively invoke his right to remain silent.... Here, we find that the court's decision was not manifestly erroneous. The evidence supports the court's finding that the petitioner's statement was unclear as to whether he was invoking his *Miranda* rights.

In granting Mr. Lilly's habeas petition, the district court found the performance of Mr. Lilly's appellate counsel to have been defective in two respects, the first of which was the failure to challenge the trial court's denial of the motion to suppress Mr. Lilly's post-arrest statements to a police officer. The district court's analysis began with a finding, based on *Christopher v. State of Florida*, 824 F.2d 836 (11th Cir. 1987), *cert. denied sub nom., Dugger v. Christopher*, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988), and *United States v. Gotay*, 844 F.2d 971 (2nd Cir.1988), that Mr. Lilly's *Miranda* rights were violated. From this finding, the district court reasoned that appellate counsel's failure to raise a meritorious *Miranda* claim lacked any plausible tactical basis, and so fell outside the range of professional performance required by the Sixth Amendment. Finally, the district court concluded that actual prejudice had been shown because another

court would have reversed due to the *Miranda* violation.

We believe a different analysis is required. The threshold question is not whether today's law discloses a *Miranda* violation; Mr. Lilly does not seek a writ of habeas corpus on Fourth or Fifth Amendment grounds. Because Mr. Lilly claims a deprivation of his Sixth Amendment right to effective assistance of counsel, we begin with the initial question posed by *Strickland:* whether, under all the circumstances and under scrutiny highly deferential to counsel, the challenged actions "were outside the wide range of professionally competent assistance." 466 U.S. at 689–690, 104 S.Ct. at 2065–66.

■ This analysis must be made in the context of the law as it confronted an Illinois lawyer in 1983. The Sixth Amendment does not require counsel to forecast changes or advances in the law, or to press meritless arguments before a court. *Kurina v. Thieret*, 853 F.2d 1409, 1417 (7th Cir.1988), *cert. denied sub nom., Kurina v. Haws*, 489 U.S. 1085, 109 S.Ct. 1544, 103 L.Ed.2d 848 (1989). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ In 1983, no attorney had the benefit of the Eleventh Circuit's 1987 decision in *Christopher v. State of Florida*, 824 F.2d 836, or the Second Circuit's 1988 decision in *United States v. Gotay*, 844 F.2d 971. Because this circuit heretofore has not adopted those decisions and it is unnecessary to do so to decide today's case, we need not address those decisions' persuasive effect in this circuit in 1993. Today's case demands that we consider the case law confronting counsel in 1983.

The record discloses that at the hearing on the suppression motion, the prosecution cited *People v. Krueger*, 82 Ill.2d 305, 45 Ill.Dec. 186, 412 N.E.2d 537 (1980), a case decided by the Illinois Supreme Court two

years before Mr. Lilly's trial. In *Krueger*, the defendant had waived his right to remain silent and began to answer questions. After the interrogation had proceeded for a time, the defendant stated that maybe he ought to get a lawyer. After some further discussion, the defendant answered additional questions and gave a written statement. The Illinois Supreme Court discussed *Miranda*, including the statement that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning," *Miranda*, 384 U.S. at 444–445, 86 S.Ct. at 1612; *Krueger*, 45 Ill.Dec. at 189, 412 N.E.2d at 540, but concluded that the defendant's "indecisive remarks" did not constitute an invocation of his right to cease the interrogation. The court explained,

> *Miranda*'s "in any manner" language directs that an assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity. We do not believe, however, that the Supreme Court intended by this language that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel.

*People v. Krueger*, 45 Ill.Dec. at 189, 412 N.E.2d at 540.

*Krueger* was not the Illinois courts' first pronouncement on the issue. In 1977, the Illinois Appellate Court had found that a defendant's statement that she would not make a confession was insufficiently specific to constitute an invocation of the right to halt questioning, and did not require suppression of the defendant's subsequent confession. *People v. Troutman*, 51 Ill. App.3d 342, 9 Ill.Dec. 577, 578, 366 N.E.2d 1088, 1089 (1977). The court further found that trial counsel's failure to seek a pretrial hearing on a general motion to suppress any statements by the defendant did not constitute ineffective assistance of counsel since the motion to suppress lacked merit.

In 1979, the Illinois Appellate Court had recognized that under *Miranda*, and *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), questioning must cease when a defendant indicates that he wishes to discontinue questioning and assert his right to remain silent, but relying on *Troutman*, the court indicated that any demand to end the interview must be specific. *People v. Aldridge*, 68 Ill.App.3d 181, 24 Ill.Dec. 484, 489, 385 N.E.2d 396, 401 (1979). The defendant in *Aldridge*, after responding to several questions, told the interrogating officers that there was "nothing I want to add to it". When the officers' questioning continued, the defendant responded, "[L]ook, you've got enough details right now that fits the crime so let's hang this up, huh, and you've got everything you need here now." The court found that the defendant's comments did not show a desire for all questioning to cease, but rather indicated the defendant's reluctance to convey to the officers all the details of the offense.

After *Krueger*, the United States Supreme Court held in *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378 (1981), that once a suspect invokes his right to have counsel present during interrogation, questioning may not resume until counsel is provided, or the suspect initiates further questioning. *Edwards*, however, addressed neither the invocation of the right to stop questioning nor the specificity required for such an invocation.

In May 1982, the Illinois Appellate Court decided *People v. Winston*, 106 Ill.App.3d 673, 62 Ill.Dec. 355, 435 N.E.2d 1327 (1982), in which the defendant, when informed of his rights and asked whether he wished to speak, replied, "I'm not sure whether I want to tell you about it. I mean, I want to tell somebody, but if I tell you, you're going to use it against me. And if I tell my own lawyer, he'll use it for me." Citing *Krueger*, the court concluded that these statements "were indecisive, ambiguous, and did not indicate a present desire for an attorney." *Id.* 62 Ill.Dec. at 363, 435 N.E.2d at 1335. *See also People v. Harper*, 94 Ill.App.3d 298, 49 Ill.Dec. 874, 876–877, 418 N.E.2d 894, 896–897 (1981) (suspect's trip to car to get attorney's card did

not invoke right to cease questioning to speak with counsel).

Mr. Lilly's appellate brief was filed on July 1, 1983. On March 24, 1983, the Illinois Appellate Court had decided *People v. Smith*, 113 Ill.App.3d 305, 69 Ill.Dec. 339, 447 N.E.2d 556 (1983), in which the defendant was informed of his rights and then was asked whether he wanted to talk to the police officer without an attorney present. When the defendant answered, "Yeah and no, uh, I don't know what's what really", the officer told him he had to choose, and the defendant agreed to talk without counsel. The state appellate court found *Krueger* controlling, and found the facts of *Smith* even more compelling: "Here, Smith had not even been given the full *Miranda* warnings when he stated that he would like an attorney. Although Smith's statement, taken out of context, appears clear and unequivocal, when it is considered with other statements—as it should be—it is clear that Smith was undecided about exercising his right to counsel." 69 Ill.Dec. at 342, 447 N.E.2d at 559.

The United States Supreme Court reversed Smith's conviction, noting that when the officers told Smith of his right to have an attorney present during questioning (and before asking whether he wished to speak with them), Smith said, "I'd like to do that." This statement, the court held, was not equivocal or ambiguous, and could not be rendered ambiguous by the responses to further questioning. *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). But this opinion was not available to Mr. Lilly's counsel in 1983.

Thus, in 1983, Mr. Lilly's appellate counsel faced a cluster of recent Illinois cases construing *Miranda*'s "in any manner" language as demanding something more than a halting, uncertain suggestion of a desire to remain silent or to have counsel present. Prevailing Illinois law already had considered the United States Supreme Court precedents upon which any further argument could be constructed. *See, e.g., People v. Aldridge*, 68 Ill.App.3d 181, 24 Ill.Dec. 484, 489, 385 N.E.2d 396, 401 (1979). Further, unlike the circumstances in *Freeman v.*

*Lane*, 962 F.2d 1252, 1258–1259 (7th Cir. 1992), no well-established Seventh Circuit precedent recommended preserving the issue for ultimate federal habeas review. Under these circumstances, we cannot agree that the failure to raise what appeared, in 1983, to be a losing issue fell outside the wide range of professional assistance that constitutes effective assistance of counsel. *See Page v. United States*, 884 F.2d 300, 302 (7th Cir.1989) ("One of the principal functions of appellate counsel is winnowing the potential claims so that the court may focus on those with the best prospects. Defendants need dedicated, skillful appellate counsel, not routineers who present every non-frivolous claim.").

Because we find that Mr. Lilly has failed to satisfy the "performance" prong of *Strickland*, we need not address the "prejudice" prong. The failure to pursue the *Miranda* issue did not deprive Mr. Lilly of effective assistance of counsel.

### 2. Failure to Challenge Exclusion of Evidence

The district court also found ineffective assistance of counsel in the failure to appeal the trial court's exclusion of the proffered testimony of Gerald Lilly, brother of Mr. Lilly and uncle of the victim. The district court recognized that state court evidentiary rulings normally are not subject to federal habeas review, but concluded that the testimony's exclusion violated Mr. Lilly's Fourteenth Amendment right to a fair trial under *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). The uncle would have testified that twice within a week or two before the charged events, Mr. Lilly had put the victim out of her grandmother's house, and that the victim appeared to be angry with Mr. Lilly when the uncle let her back into the house. Mr. Lilly argues, and the district court agreed, that this evidence was relevant to rebut evidence of Mr. Lilly's statement that the victim "had no reason to lie", and to show that the victim had

a motive to fabricate a story of child molesting. We disagree.

Federal courts can grant habeas relief only when a violation of federal statutory or constitutional law has occurred. *Haas v. Abrahamson,* 910 F.2d 384 (7th Cir.1990). Because the admissibility of evidence in state court proceedings generally is a matter of state law, state court evidentiary rulings rarely will serve as grounds for granting a writ of habeas corpus. 910 F.2d at 389. *See Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *Cramer v. Fahner,* 683 F.2d 1376, 1385 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982); *United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517 (7th Cir.1982). Unless it is shown that "a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's right to a fundamentally fair trial" under the Due Process Clause. *Haas v. Abrahamson,* 910 F.2d at 389; *United States ex rel. Lee v. Flannigan,* 884 F.2d 945, 952 (7th Cir.1989), *cert. denied,* 497 U.S. 1027, 110 S.Ct. 3277, 111 L.Ed.2d 786 (1990).

In determining whether the exclusion of evidence violated an accused's constitutional rights, we must examine whether the proffered evidence was relevant, material, and vital to the defense, and whether the exclusion of that evidence was arbitrary. *Lang v. Young,* 869 F.2d 1008, 1011 (7th Cir.1989). *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). The trial court's ruling was not arbitrary under Illinois law, which provides that evidence may be excluded when its relevancy is so speculative that it is of little probative value. *See People v. Manion,* 67 Ill.2d 564, 10 Ill.Dec. 547, 367 N.E.2d 1313 (1977); *People v. Mikel,* 73 Ill.App.3d 21, 29 Ill.Dec. 287, 391 N.E.2d 550 (1979). The probative value of the evidence was speculative. The uncle would have described events that occurred well before the charged crime. Even if the victim appeared angry on the

days she was put out of the house, speculation alone supports an inference that her anger continued for a week or two and inspired her to invent a story of child molesting on a day Mr. Lilly did not put her out of the house. As the uncle noted, "All kids get mad."

Error in the exclusion of evidence reaches constitutional magnitude if the excluded evidence creates a reasonable doubt that did not otherwise exist. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Given the tenuous nature of the temporal and logical links between the lockouts and the reporting of the sexual assault, this court cannot agree that the uncle's testimony would have created a doubt where none existed before. The defense's decision not to cross-examine the victim concerning these events underscores the proof's minimal probative value.

The state trial court's discretionary decision to exclude the uncle's testimony on relevancy grounds did not violate Mr. Lilly's Fourteenth Amendment right to a fair trial. The failure to appeal that issue did not deprive Mr. Lilly of effective assistance of appellate counsel.

For the foregoing reasons, we REVERSE the district court's grant of the writ of habeas corpus and direct the district court to deny the petition for writ of habeas corpus.